FILED
2005 Jun-14  PM 02:50
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

UNITED STATES OF AMERICA
*ex rel.* ***UNDER SEAL,***

      Plaintiffs,

BRINGING THE ACTION ON
BEHALF OF THE UNITES STATES
OF AMERICA

v.

***UNDER SEAL,***

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. _____

**Filed <u>Under Seal</u>
Pursuant to 31 U.S.C.
§ 3730 (b)(2)**

**DO NOT PLACE IN PRESS BOX**

**DO NOT ENTER ON PACER**

---

## FALSE CLAIMS ACT COMPLAINT

---

1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| _____ ) | |
| UNITED STATES OF AMERICA ) | |
| *ex rel.* BRADLEY BARBER, ) | |
| ) | Civil Action No. _____ |
| Plaintiff, ) | |
| ) | |
| BRINGING THE ACTION ON ) | |
| BEHALF OF THE UNITES STATES ) | |
| OF AMERICA ) | **Filed Under Seal** |
| ) | **Pursuant to 31 U.S.C.** |
| Alberto Gonzales ) | **§ 3730 (b)(2)** |
| United States Attorney General ) | |
| Department of Justice ) | |
| 10th & Constitution Ave., N.W. ) | |
| Washington, D.C. 20530 ) | |
| ) | |
| and ) | **DO NOT PLACE IN PRESS BOX** |
| ) | |
| Cindy Simmons, Chief, Civil Div. ) | **DO NOT ENTER ON PACER** |
| United States Attorney's Office ) | |
| Northern District of Alabama ) | |
| 200 Vance Federal Building ) | |
| 1800 Fourth Avenue North ) | |
| Birmingham, Alabama 35203 ) | |
| ) | |
| ) | |
| v. ) | |
| ) | |
| DOSTER CONSTRUCTION COMPANY; ) | |
| THE INTEGRAL GROUP, LLC and ) | |
| EAGLE MASONRY, INC. ) | |
| ) | |
| Defendants. ) | |
| _____) | |

---

## FALSE CLAIMS ACT COMPLAINT

---

For his Complaint, Plaintiff-Relator, on behalf of himself and on behalf of the United States of America, alleges as follows:

## I.     THE NATURE OF THE ACTION

1.     Mr. Bradley Barber, Plaintiff and Relator, brings this action pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729, *et seq.,* to recover treble damages, civil penalties and all other relief available under the Act.

2.     The Defendants, Doster Construction Company, The Integral Group, LLC, and Eagle Masonry, Inc., have engaged in systematic fraud against the United States of America which is violative of the civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

3.     Plaintiff-Relator has satisfied all pre-requisites under the Act prior to filing the instant Complaint.

## II.    JURISDICTION

4.     This action arises under the civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.* Consequently, this Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a).

5.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1345 as this action is being commenced by an authorized agent of the United States Government.

6.     This Court likewise has jurisdiction over the instant action pursuant to 28 U.S.C. § 1331 as the following allegations implicate a "federal question."

7.     This Court may exercise personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because (1) the allegations which are the subject of this Complaint occurred in this Judicial District and (2) the Defendants, Doster Construction

Company, The Integral Group, LLC, and Eagle Masonry, Inc., transact business in this Judicial District.

III. **VENUE**

8.   Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Defendants, Doster Construction Company, The Integral Group, LLC, and Eagle Masonry, Inc., reside, can be found, or  transact business in this Judicial District.

IV. **THE PARTIES**

9.   Plaintiff-Relator, Bradley Barber, is a citizen of the United States and a resident of the State of Alabama.

10.   Relator Barber began his career as a journeyman master brick, block, and stone mason in 1973.

11.   As an experienced mason, Mr. Barber has worked on a variety of complex masonry projects, including both residential and commercial.

12.   Relator Barber, a resident of Birmingham, Alabama, continues to work as brick mason in this geographic area through the present time.

13.   Relator Barber learned of the instant allegations of fraud and false claims on or about July of 2004 during the time when Relator was seeking work as a brick mason at the Hope Six Revitalization Project, also known as Park Place, in Downtown, Birmingham.

14.   Relator Barber is an original source of this information to the United States Government.  He has direct and independent knowledge of the information on which the following allegations are based.  Such allegations derive, in part, from Relator's

4

own personal knowledge gained while seeking employment as a brick mason on or about July of 2004.

15.    Defendant, Doster Construction Company (hereinafter "Doster"), is a Birmingham based general contracting, design, and construction management firm.

16.    Doster's principal place of business and headquarters is in Birmingham, Alabama.

17.    Doster's principal business address is 2100 International Park Drive, Birmingham, Alabama 35243.

18.    Doster and The Integral Group, LLC, are joint prime contractors to the Federal Government for the Hope Six Revitalization Project, also known as Park Place.

19.    Alan Chandler is Doster's senior project manager for the Hope Six Revitalization Project.

20.    Defendant, The Integral Group, LLC (hereinafter "Integral"), is an Atlanta based construction and management firm, providing commercial and residential real estate and construction management services in the Southeastern United States.

21.    Integral's services include design, pre-construction services, budget development, site supervision, infrastructure, and development.

22.    The Integral Group is a self-described holding company for at least six other business, including: (1) Integral Properties, LLC; (2) Integral Real Estate Group, LLC; (3) Integral Homes, LLC; (4); Integral Building Group, LLC; (5) INS Management Services, LLC; and (6) INS Human Services Management.

23.    The Integral Group and Integral Building Group, LLC, are headquartered at 60 Piedmont Avenue, N.E., Atlanta, Georgia 30303.

5

24.     Defendant, Eagle Masonry, Inc., is a masonry business headquartered in Lawrenceville, Georgia, a suburb of Atlanta.

25.     Eagle Masonry is the subcontractor for masonry work on the Hope Six Revitalization Project, also known as Park Place.

26.     Adolf Escobar is the main ground-level contact on the Hope Six Revitalization job site.

**V.      THE FEDERAL CIVIL FALSE CLAIMS ACT**

27.     The Federal Civil False Claims Act (hereinafter "FCA") , as amended, provides in pertinent part that:

(a)     Any person who (1) knowingly presents, or causes to be presented to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; (3) conspires to defraud the Government by getting a false or fraudulent claim paid or approved by the Government, or (7) knowingly makes, uses or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,....

is liable to the United States Government for a civil penalty of not less than $5,500 and not more than $11,000, plus 3 times the amount of damages which the Government sustains because of the act of that person.

(b)     For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information (1) had actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

(c)     For purposes of this section, "claim" includes any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for an portion of the money or property which is requested or demanded.

31 U.S.C. § 3729.

## VI.     THE HOPE SIX REVITALIZATION HOUSING PROJECT

28.     The Hope Six Revitalization Program, originally known as the Urban Revitalization Demonstration, began in the early 1990's as a result of the recommendations of the National Commission on Severely Distressed Public Housing.  As a result of that Commission's findings, Hope Six was created by the Departments of Veterans Affairs and Housing and Urban Development.  The Hope Six program began with the passage of the Independent Agencies Appropriations Act, approved on October 6, 1992.

7

29.    The purpose of the Hope Six program is to eradicate severely distressed public housing.  Any local public housing authority with a severe distressed housing problem is eligible to receive a federal grant for Hope Six Demolition and Revitalization.

30.    The Hope Six Program is a mixed-finance program because the residents vary from private home ownership, rental, subsidized, and public housing.

31.    In Birmingham, Alabama, the Hope Six Program is known as Metropolitan Gardens or Park Place.  The project is located in the northeast downtown core of Birmingham, only a few blocks from City Hall.

32.    The Housing Authority of the Birmingham district ("HABD") was awarded approximately Thirty-Five Million Dollars in 1999 for Hope Six Revitalization and development.

33.    The central address for the Hope Six Metropolitan Gardens Project is 600 24th Street North, Birmingham, Alabama 35203.

34.    The Housing Authority of the Birmingham District, believed to be responsible for administering the Hope Six Revitalization grant for Metropolitan Gardens, is located at 1826 3rd Avenue, South, Birmingham, Alabama 35255.

35.    Ralph D. Ruggs is the Executive Director of the Housing Authority of the Birmingham District and is believed to be the Local Contract Administrator ("LCA") for the Hope Six grant.

36.    The Housing Authority of the Birmingham District has engaged a program management firm for help with planning, management, and implementation—the

8

Boulevard Group, Inc., which has expertise in other Hope Six projects on a national level.

## VII.   THE IMMIGRATION REFORM AND CONTROL ACT ("IRCA")

37.   The Congress of the United States saw fit in 1986, with the passage of the Immigration Reform and Control Act of 1986 ("IRCA"), to make *employment* of unlawful illegal aliens a federal crime.  *See*, § 101(a)(1), 100 Stat. 3360, 8 U.S.C. § 1324(a).

38.   Since that time, the United States Supreme Court has recognized and upheld the IRCA, noting that "IRCA 'forcefully' made combating the employment of illegal aliens central to '[t]he policy of immigration 'law." *See*, *Hoffman Plastics Compounds, Inc. v. National Labor Relations Board*, 535 U.S. 137 (2002).

39.   The 1986 IRCA also mandated the use of a comprehensive "Employment Verification System" in order to require employers to verify an employees 'lawful citizenship or lawful presence' in this country.  *See*, § 1324a(b).

40.   In general, "for an alien to be 'authorized to work in the United States, he or she must possess 'a valid social security account number card,' or other documentation evidencing authorization of employment in the United States..." *See, for example, e.g., Nat'l Labor Relations Bd.* at 1282.

41.   Violation of the IRCA subjects employers to civil fines and criminal prosecution.

42.   Employers certify compliance with the IRCA with the completion, signing and submission of a Form I-9, "Employment Eligibility Verification" form.

43.   By signing the I-9 form employers explicitly certify "under penalty of perjury, that

9

to the best of my knowledge, this employee is eligible to work in the United States....

the document(s) [] examined appear to be genuine and relate to the individual."

## VIII.   THE DAVIS-BACON ACT

44.   The Davis-Bacon Act, as amended, was enacted in 1931 in order to end wage abuses by the construction industry that occurred when construction firms imported cheap labor for federally funded construction projects rather than hiring *local* skilled workers at prevailing wage rates.

45.   The Davis-Bacon Act is commonly called a prevailing wage statute because it requires federal contractors to pay prevailing wages to all its employees (i.e., the going wages for the specific labor category in the geographic community where the project is being constructed).

46.   In general, the Davis-Bacon Act requires construction firms engaged in federal construction projects in excess of $2,000 to pay all workers, laborers, and mechanics the prevailing wage rates determined by the Department of Labor. *See*, 40 U.S.C. § 3142 *et seq.*

47.   Title 29 of the Code of Federal Regulations details the mechanism by which the Department of Labor determines prevailing wage rates (a.k.a., wage decisions or wage determinations).

48.   Generally, wage decisions apply to specific counties in each state; once a federal contract has been awarded, the prevailing wage decision is locked in for the duration of the project.

49.   The prime contractor for the federal construction project is liable and responsible for

10

full compliance of all employers (all other contractors and subcontractors) with the Davis-Bacon Act).

50.     Once a wage determination has been made by the Department of Labor, a Davis-Bacon prevailing wage poster (Form WH-1321) is required to be posted at the construction site at a prominent and accessible location.

51.     The Davis-Bacon wage determination lists all work categories and their corresponding prevailing wages and fringe benefits on a Project Wage Rate Sheet.

52.     After the wage determination has been applied for and determined by the Department of Labor and after the Project Wage Rate Sheet has been posted, the prime federal contractor must begin to submit weekly payroll certifications to the federal government upon commencement of the project.

53.     The aforementioned certified payroll reports are required on a weekly basis and are generally numbered consecutively.

54.     A Statement of Compliance must also be signed and certified by the employer along with the Payroll Certifications.

55.     The purpose of the weekly Payroll Certifications is to document compliance with Davis-Bacon's prevailing wage determinations.

IX.     **FACTS COMMON TO ALL COUNTS**

56.     In the summer of 2004, Relator Bradley Barber was looking for work as a master journeyman mason.

57.     In an attempt to find masonry work in the local Birmingham area, Relator Barber contacted Doster Construction Company on or about July 30, 2004 at the telephone

11

number of ████████████, Relator Barber was given the name of Alan Chandler with Doster Construction and his direct telephone number ████████████.

58.  Relator Barber, in an attempt to find masonry work, contacted Mr. Chandler on or about July 30, 2004 and was told to get in touch with the brick subcontractor, Eagle Masonry out of Atlanta, Georgia.

59.  On or about August 2, 2004, Relator Barber went to the Hope Six job site in downtown Birmingham in order to apply for work through the brick subcontractor, Eagle Masonry.

60.  Relator Barber arrived at the Hope Six job site at approximately 6:25 a.m. on the morning of August 2nd and was told, "You can't work here because we are only hiring Hispanics to do the masonry on this site."

61.  Thereafter, Relator Barber proceeded to the main Doster Construction office located on site and was greeted by three superintendents: (1) Darrell Dutton, (2) Drew Brown, and (3) Eric Anderson.

62.  Relator Barber was told by the Doster site superintendents that he needed to contact Adolf Escobar, the superintendent for Eagle Masonry.

63.  After Mr. Escobar arrived on the construction site and after he conversed with the three Doster superintendents, he told Relator Barber that he did not need any more masonry employees.

64.  Relator Barber personally observed illegal and undocumented aliens performing work on this federally financed construction project.

65.  On or about August 3, 2004, Relator Barber returned to the Hope Six job site to take

12

photographs of illegal Hispanics working on site.  As Relator was lawfully taking said photographs of the construction site and the unlawful construction workers, he was approached and threatened with criminal trespass charges by Doster superintendents and Adolf Escobar.

66.  Mr. Escobar also attempted to wrestle Relator's camera away from him and when he was unsuccessful sent out another employee to take photographs of Relator who was across the street taking his own photographs.

67.  During the time in which Relator Barber personally visited the construction site on or August 2nd and 3rd of 2004, he personally observed dozens of persons known to him to be illegal aliens working on the Hope Six federally funded construction site.

68.  Relator estimates that approximately 75 illegal undocumented aliens were performing work on the Hope Six construction project on the days he visited.

69.  Relator Barber established a contact with a security guard on site who indicated that illegal alien Hispanics were being paid in cash every Friday afternoon by construction officials.  The security guard's name is ▮▮▮▮▮▮▮▮.

70.  Relator has been able to determine that the contractors doing the federal construction work on the Hope Six project have not posted a WH-1321 notice (i.e., setting for the prevailing minimum wages) at the construction site as required by Davis-Bacon and the Department of Labor.

71.  The federal contractors responsible for the construction on this Hope Six federally finance job site compensate these illegal alien Hispanic workers between $8.00 and $10.00 per hour, well below the Davis-Bacon prevailing wage determinations.

72.     Although Relator is most knowledgeable with respect to the masonry aspect of this illegal employment, he states that, upon information and belief, many other jobs besides masonry jobs are being filled by illegal undocumented aliens, for example, roof and finish carpenters, roofers, concrete floors, and finishers, sheet rock hangers and finishers, painters, and masons helpers.

## X.     DAMAGES

73.     The United States of America and the public fisc has been damaged by Defendants' fraudulent and wrongful activity as alleged herein.

74.     The Federal Treasury has been unlawfully and unjustly depleted by Defendants' aforementioned fraudulent activity and false claims.

75.     Defendants have unjustly profited by receiving money from the Federal Treasury to which they were not entitled.

## XI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### False Claims Act: Presentation of False Claims

### 31 U.S.C. § 3729(a)(1)

76.     Plaintiff-Relator hereby re-alleges, repeats and incorporates the allegations in ¶¶ 1 through 75 as if fully set forth herein.

77.     Defendants, Doster Construction Company, The Integral Group, LLC, and Eagle Masonry, Inc., by or through its agents, officers, subcontractors, or employees, knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval to the United States Government.

14

78.     By virtue of the false or fraudulent claims submitted by Defendants, Doster Construction Company, The Integral Group, LLC, and Eagle Masonry, Inc., the United States of America has suffered material damages and is therefore entitled to treble damages, civil penalties, and all other relief available under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

## SECOND CAUSE OF ACTION

### False Claims Act: Making or Using a False Record or Statement

### 31 U.S.C. §3729(a)(2)

79.     Plaintiff-Relator hereby re-alleges, repeats, and incorporates the allegations in ¶¶ 1 through 75 as if fully set forth herein.

80.     Defendants, Doster Construction Company, The Integral Group, LLC, and Eagle Masonry, Inc., by or through its agents, officers, subcontractors, or employees, knowingly made, used or caused to be made or used, false records or statements in order to get false or fraudulent claims paid or approved by the United States Government.

81.     By virtue of the false records or statements submitted by Defendants, Doster Construction Company, The Integral Group, LLC, and Eagle Masonry, Inc., the United States of America has suffered material damages and is therefore entitled to treble damages, civil penalties, and all other relief available under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

15

**THIRD CAUSE OF ACTION**

**False Claims Act: Conspiring to Defraud the United States**

**31 U.S.C. § 3729(a)(3)**

82.     Plaintiff-Relator hereby re-alleges, repeats, and incorporates the allegations in ¶¶ 1

through 75 as if fully set forth herein.

83.     Defendants, Doster Construction Company, The Integral Group, LLC, and Eagle

Masonry, Inc., by or through its agents, officers, or employees, knowingly conspired

with third parties to defraud the United States Government by getting false or

fraudulent claims allowed or paid.

84.     Defendants, Doster Construction Company, The Integral Group, LLC, and Eagle

Masonry, Inc., by or through its agents, officers, subcontractors, or employees,

committed overt acts in furtherance of such conspiracy.

85.     By virtue of this conspiracy to defraud the United States of America, Defendants,

Doster Construction Company, The Integral Group, LLC, and Eagle Masonry, Inc.,

the United States of America has suffered material damages and is therefore entitled

to treble damages, civil penalties, and all other relief available under the False Claims

Act, 31 U.S.C. §§ 3729 *et seq.*

## XII.   PRAYER FOR RELIEF

**Wherefore**, Plaintiff-Relator respectfully requests this Court to enter judgment against

Defendants as follows:

86.     That the United States of America be awarded treble the amount of actual damages

sustained because of Defendants' fraudulent activity and submission of false claims

for payment out of the United States Treasury.

87.  That civil monetary penalties of $11,000 be imposed for each and every false claim or invoice presented to the United States Government by Defendants.

88.  That pre-judgment and post-judgment interest be awarded.

89.  That those reasonable attorneys fees, costs and expenses, which the Plaintiff-Relator necessarily incurred in bringing the action, be awarded.

90.  That the Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act violations alleged herein.

91.  That the Court grant any other relief as may be proper and just.


_____
Scott A. Powell
Don McKenna
James R. Moncus, III

Attorneys for Plaintiff-Relator

**OF COUNSEL:**

**HARE, WYNN, NEWELL & NEWTON**
2025 Third Avenue North
Suite 800
Birmingham, Alabama 35203
(205) 328-5330
Facsimile: (205) 328-2165